UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOAN NOEL, and JOAN NOEL as )
personal representative of the )
estate of GLENNON NOEL, )
)
        Plaintiffs, )
)
  v. ) Case No. 4:08CV00817 FRB
)
LACLEDE GAS COMPANY, et al., )
)
        Defendants. )

**MEMORANDUM AND ORDER**

Plaintiffs Joan Noel, and Joan Noel as personal representative of the estate of Glennon Noel ("plaintiffs") originally filed this nine-count Petition in the Circuit Court for the City of St. Louis, Missouri, against defendants Laclede Gas Company ("Laclede"), and Great-West Life and Annuity Insurance Company ("Great-West"). On June 5, 2008, Laclede removed this action to this Court on the basis of federal question jurisdiction. Presently pending is plaintiffs' Motion to Remand (Docket No. 13/filed July 3, 2008). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiffs' late husband, Glennon Noel, was employed by Laclede from approximately 1986 to April 10, 2006, and was a participant in an employee benefit plan ("Plan") that included life insurance coverage with a death benefit of $60,000.00. This life

insurance policy (also "policy") is the only benefit of the Plan at issue in this case. Plaintiffs were beneficiaries of the policy, and Laclede was the Plan Administrator. Great-West was the insurance company from which Laclede purchased the policy. In their petition, plaintiffs allege, and defendants do not dispute, that the Plan was an "employee benefit plan" subject to the rules and regulations of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1001, et seq.

The essence of all counts of the Petition is that both defendants violated certain provisions of federal and state law by failing to furnish a Summary Plan Description ("SPD") and other requested information, and by either failing to advise, or providing wrong advice, regarding Mr. Noel's right to elect continued coverage and/or convert the policy to an individual policy upon termination of his employment. Plaintiffs also allege that, as a result of defendants' wrongdoing, neither they nor Mr. Noel had secured other life insurance for Mr. Noel prior to his death on July 26, 2006, and the policy at issue had lapsed.

More specifically, the instant Petition alleges as follows. In Count I, plaintiffs allege that Laclede violated the Consolidated Omnibus Reconciliation Act ("COBRA"), 29 U.S.C. § 1166, inasmuch as Laclede failed to provide notice to Mr. Noel, within fourteen days of termination of his employment, of the right to elect continued life insurance coverage. In Count II, plaintiffs allege that Laclede violated certain ERISA provisions when it failed to provide Mr. Noel, within thirty days of his

request, a copy of the SPD. In Count III, plaintiffs allege that Laclede violated ERISA when it failed to provide Mr. Noel a properly written SPD at certain intervals. In Count IV, plaintiffs allege that Laclede breached its fiduciary duty when it failed to timely notify plaintiffs of their right to elect continued life insurance coverage under the terms of the Plan. In Count V, plaintiffs allege a negligent misrepresentation claim against Laclede, inasmuch as Laclede advised Mr. Noel and plaintiffs, via letter, of their right to continue benefits, but such advice did not pertain to life insurance benefits, as Mr. Noel and plaintiffs believed. In Count VI, plaintiffs allege a fraudulent misrepresentation claim against Laclede, alleging that Laclede "maintained" that Mr. Noel would have the right to convert the policy, and in Count VII, plaintiffs allege a breach of contract claim against Laclede. In Count VIII, plaintiffs allege that Great-West violated Missouri law; specifically Mo.Rev.Stat. § 376.699, inasmuch as Great-West failed to provide notice to Mr. Noel of his right to have an individual policy of life insurance issued to him. In Count IX, plaintiffs allege a breach of contract claim against Great-West, inasmuch as Great-West failed to notify Mr. Noel of his right to have an individual life insurance policy issued to him upon his termination from Laclede, or that the policy would lapse for non-payment of premiums.

In support of the instant Motion to Remand, plaintiffs argue that Laclede's Notice of Removal is defective, inasmuch as Great-West failed to timely file consent to removal. On the issue

-3-

of jurisdiction, plaintiffs argue that this Court has concurrent jurisdiction over Counts I through III (against Laclede); supplemental jurisdiction over Counts IV through VII (against Laclede), and pendent party jurisdiction over Counts VIII through IX (against Great-West). Plaintiffs argue that this Court should decline to exercise its supplemental jurisdiction over Counts IV through VII, and "accordingly remand those counts to state court." (Docket No. 14 at 6.) Plaintiffs also argue that this Court should decline to exercise jurisdiction over Great-West, "against which there are only state law counts." Id.

In support of their Motion to Remand Counts IV through IX, plaintiffs argue, inter alia, that state law issues substantially predominate the litigation. Plaintiffs do not address the issue of ERISA preemption. In response, Great-West filed a memorandum in opposition, with which Laclede joined. Therein, defendants assert that, before filing the Notice of Removal, Laclede had obtained Great-West's consent, and advised this Court of such consent in the removal notice. Defendants also argue that Great-West unambiguously expressed its consent by filing a Motion to Dismiss based upon federal preemption grounds. On the issue of jurisdiction, defendants argue that this Court has federal question jurisdiction over all nine counts of plaintiffs' Petition, because Counts I through III allege violations of federal law, and because ERISA completely preempts plaintiffs' claims in Counts IV through IX. For the following reasons, defendants' arguments are well-taken.

I. **Discussion**

As plaintiffs correctly note, defendants, as the parties seeking removal and opposing remand, bear the burden of establishing federal jurisdiction. In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993). This Court must resolve doubts regarding the propriety of removal in favor of remand to state court. Id.

A. Great-West's Consent to Removal

In their Motion to Remand, plaintiffs first argue that Laclede's Notice of Removal is defective because Great-West failed to timely file its consent to removal. Both defendants argue that Great-West's consent was timely and unambiguous, inasmuch as Great-West timely filed a motion to dismiss in which it argued that this Court has federal question jurisdiction over all of plaintiffs' claims. For the following reasons, defendants' arguments are well-taken.

"Under the rule of unanimity, ordinarily all defendants must join in a notice of removal or the case will be remanded." Marano Enterprises of Kansas v. Z-Teca Restaurants, 254 F.3d 753, 755 n. 2 (8th Cir. 2001); see also Amteco, Inc. v. BWAY Corp., 241 F.Supp.2d 1028, 1030 (E.D. Mo. 2003). "Removal jurisdiction requires all defendants to join in the removal petition or consent to removal within thirty days of service." Amteco, 241 F.Supp.2d at 1029. In order to satisfy the rule of unanimity, each defendant must provide "some form of 'unambiguous consent'" to the court in a timely fashion. Id. at 1030 (quoting Codapro Corp. v. Wilson,

997 F.Supp. 322, 325-26 (E.D. N.Y. 1998)).

The purpose of requiring each co-defendant to "independently and unambiguously" file notice of consent is to ensure each co-defendant intends to join in the removal. See Codapro, 997 F.Supp. at 326 (quoting Henderson v. Holmes, 920 F.Supp. 1184, 1187 (D. Kan. 1996)). "Accordingly, 'there must be some timely filed written indication from each defendant, or some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action.'" Id. (quoting Getty Oil Corp., Div. of Texaco, Inc. v. Ins. Co. of North America, 841 F.2d 1254, 1262 n. 11 (5th Cir. 1988)). Requiring written consent from each defendant prevents one defendant from choosing a forum for all. Id. (citing Production Stamping Corp. v. Maryland Cas. Co., 829 F.Supp. 1074, 1076 (E.D. Wis. 1993)).

Courts disagree on the issue of what amounts to acceptable consent to removal. While some courts have refused to accept a motion to dismiss or an answer as a sufficient manifestation of a co-defendant's consent, such decisions noted that the pleading in question was insufficient because it was either untimely, or it did not speak to the issue of removal. Gribler v. Weisblat, 2008 WL 563469, 2 (S.D. N.Y. 2008) (motion to dismiss did not constitute consent to removal because it was untimely and contained no unambiguous manifestation of consent to removal); Heinrich v. Falls, 2006 WL 335635, 2 (E.D. Va. 2006) (a motion to dismiss filed by an allegedly consenting defendant was

insufficient as to consent to remove because it was "completely silent as to whether she consents to removal"); Unicom Systems, Inc. v. National Louis University, 262 F.Supp.2d 638 (E.D. Va. 2003) (filing of answer could not serve as consent to removal petition when answer was wholly silent on issue of removal, and thus did not contain requisite affirmative and unambiguous manifestation of consent to removal). Other circuits have recognized the mere filing of an answer as sufficient to manifest consent to removal. Hernandez v. Six Flags Magic Mountain, Inc., 688 F.Supp. 560, 562 (C.D. Cal. 1988) (denying the plaintiff's motion for remand, finding that the defendant "arguably satisfied the thirty day requirement in the statute when it answered the federal complaint within the thirty day period, thereby manifesting its intent to join in the removal"); Glover v. W.R. Grace & Co., Inc., 773 F.Supp. 964, 965 (E.D. Tex. 1991) (denying a motion to remand when a defendant did not join the removal petition, but did manifest its consent to removal by filing an answer in the district court.)

    The undersigned finds the Sixth Circuit's decision in Harper v. AutoAlliance Intern., Inc., 392 F.3d 195 (6th Cir. 2004) to be a well-reasoned and sensible reconciliation of the foregoing cases. There, the Sixth Circuit affirmed the district court's finding that a defendant's timely-filed answer was sufficient to manifest that defendant's consent to removal when the pleading stated that proper jurisdiction and venue were in the district court. Harper, 392 F.3d at 202. In addition, this District has

recognized that courts accept as sufficient different forms of consent, including consent given orally to the court during a conference or hearing, and consent filed with the court in writing. Amteco, 241 F.Supp.2d at 1030 (citing Colin v. Schmidt, 528 F.Supp. 355 (D. R.I. 1981)). What the Amteco court emphasized, however, was that the consent be communicated directly to the court. In Amteco, a corporate defendant's president provided oral consent to the removing co-defendant's lawyer, but the corporation provided no form of consent directly to the court within thirty days. Amteco, 241 F.Supp.2d 1028. The court ultimately remanded the case to state court on the issue of defective removal after finding that, while consent had been communicated between the parties, no form of consent had been communicated directly to the court. Id.

Applying the reasoning of all of the foregoing cases to the instant case, the undersigned finds that Great-West communicated its unambiguous consent to removal directly to this Court. On June 17, 2008, within the 30-day time period after Great-West was served, Great-West filed in this Court a Motion to Dismiss and accompanying memorandum, arguing that plaintiffs' claims were subject to dismissal because they were preempted by federal law; specifically, ERISA. Great-West's argument that this Court has jurisdiction over plaintiffs' claims was an unambiguous manifestation of Great-West's consent to the removal of this action from state court to this Court. In addition, while not dispositive of the issue, the undersigned notes that Laclede indicated in its Notice of Removal that Great-West had consented to removal; and

further notes Great-West's unequivocal representations to this Court that it has and continues to consent to the removal of this cause to this Court. Plaintiffs' point is denied.

  B. <u>ERISA Preemption of State Law</u>

  For their next point, plaintiffs argue that this Court should decline to exercise its supplemental jurisdiction over Counts IV through VII, and "accordingly remand those counts to state court." (Docket No. 14 at 6.) Plaintiffs indicate that they seek remand only of Counts IV through IX of their Petition. Plaintiffs also argue that this Court should decline to exercise jurisdiction over Great-West, "against which there are only state law counts." <u>Id.</u> Both defendants argue that plaintiffs' claims are preempted by ERISA. For the following reasons, defendants' arguments are well-taken.

  Federal question jurisdiction has long been governed by the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Beneficial Nat. Bank v. Anderson</u>, 539 U.S. 1, 12, (2003) (citing <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)). The well-pleaded complaint rule provides that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint. <u>Lyons v. Philip Morris Inc.</u>, 225 F.3d 909, 912 (8th Cir. 2000). However, this rule is inapplicable if it is evident that Congress has intended for federal law to completely

supplant state law.  Id.

"ERISA comprehensively regulates employee pension and welfare plans."[1]  Daley v. Marriott Intern., Inc., 415 F.3d 889, 894-95 (8th Cir. 2005) (quoting Baxter v. Lynn, 886 F.2d 182, 184 (8th Cir. 1989)).  The parties in the case at bar do not dispute that the Plan at issue is an ERISA plan, nor do they dispute that the policy at issue was part of that ERISA-governed Plan.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."  Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004).  To achieve this goal, ERISA includes expansive preemption provisions, "intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'"  Id. (quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, (1981)).  There are two types of ERISA preemption: "complete preemption" under 29 U.S.C. § 1132, and "express preemption" under 29 U.S.C. § 1144.

Complete preemption exists when a cause of action arises under the "civil enforcement" provision of ERISA, 29 U.S.C. § 1132, which provides as follows:

A civil action may be brought ---

    (1) by a participant or beneficiary —-

        (A)  for  the  relief  provided  for  in

---

[1] ERISA defines "employee welfare benefit plan" and "welfare plan" as "any plan, fund, or program . . . established or maintained by an employer or by an employee organization . . . to the extent that [it] was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ".  29 U.S.C. § 1002(1).

-10-

subsection (c) of this section,[2] or

    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, **or** to clarify his rights to future benefits under the terms of the plan" . . .

29 U.S.C. § 1132(a)(1) (emphasis added).

"Because of complete preemption, any claim filed by a plan participant for the same relief provided under ERISA's civil enforcement provision, even a claim purportedly raising only a state-law cause of action, arises under federal law and is removable to federal court." Prudential Ins. Co. of America v. National Park Medical Center, Inc., 413 F.3d 897, 907 (8th Cir. 2005) (citing Neumann v. AT & T Communications, Inc., 376 F.3d 773, 779-80 (8th Cir. 2004)). Any state law cause of action that "duplicates, supplements or supplants" ERISA's civil enforcement provision conflicts with Congress' clear intent to make the ERISA remedy exclusive, and is therefore completely preempted. Davila, 542 U.S. at 209. When claims are subject to complete preemption, they are properly recharacterized as claims arising under federal law, and the federal court therefore has federal question jurisdiction over them. See Id.; see also Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 66-67 (1987).

In Davila, the Supreme Court set forth a two-part test for determining whether a claim is subject to complete preemption.

---

[2]Subsection (c) of 29 U.S.C. § 1132 provides a cause of action for a plan administrator's refusal to provide a participant or beneficiary information the administrator is required to furnish.

-11-

The Court found that, if a person brought suit complaining of the denial of plan benefits, "where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of" ERISA's civil enforcement remedy, 29 U.S.C. § 1132, and is completely preempted. Davila, 542 U.S. at 210.

In contrast, ERISA's express preemption clause preempts any state law that "relate[s] to any employee benefit plan." Prudential Ins., 413 F.3d at 907; 29 U.S.C. § 1144(a). A claim "relates to" an employee benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan", Shaw v. Delta Airlines, 463 U.S. 85, 97 (1983), or "where resolution of the claim is substantially dependent on an analysis of the terms of the benefit plan." Neumann, 376 F.3d at 780. However, if a state law affects an employee benefit plan in merely a "tenuous", "remote" or "peripheral" manner, it cannot be said to "relate to" the plan. Shaw, 463 U.S. at 100 n. 21.

Express preemption does not, however, allow for automatic removal to federal court; it only provides an affirmative defense against claims not subject to complete preemption. Prudential Ins., 413 F.3d at 907. Unlike claims subject to complete preemption, those subject to express preemption are not recharacterized as claims arising under federal law and, therefore, under the well-pleaded complaint rule, do not confer federal

-12-

question jurisdiction. If a state-law claim preempted by 29 U.S.C. § 1144 is not included within the scope of 29 U.S.C. § 1132, the claim is susceptible to the defense of preemption, but federal question jurisdiction is not conferred. See Neumann, 376 F.3d at 779-80.

Express preemption is limited by the "savings clause", under which state laws that regulate insurance, banking, or securities are exempt from ERISA preemption. 29 U.S.C. § 1144(b)(2)(A). The scope of the savings clause is limited, in turn, by the "deemer clause," which provides that self-funded ERISA plans shall not be considered insurance companies or other insurers for purposes of determining whether the savings clause applies. 29 U.S.C. § 1144(b)(2)(B). The deemer clause applies only to self-funded plans. See FMC Corp. v. Holliday, 498 U.S. 52, 64 (1990).

### 1. Count VIII - Violation of Mo.Rev.Stat. § 376.699

In Count VIII, plaintiffs allege that Great-West violated Mo.Rev.Stat. § 376.699 by failing to notify Mr. Noel of his right to have an individual life insurance policy issued to him following his termination. In Count VIII, plaintiffs seek to recover Plan benefits, or $60,000.00, which they indicate represents the face value of the policy. The Missouri statute provides as follows:

> If any individual insured under a **group life insurance policy** hereafter delivered in this state **becomes entitled under the terms of such policy** to have an individual policy of life insurance issued without evidence of insurability, subject to the making of an application and paying the first premium

-13-

>within the period specified in such policy, and if such individual is not given notice of the existence of such right at least fifteen days prior to the expiration date of such period, then, in such event, the individual shall have an additional period within which to exercise such right. Nothing contained herein shall be construed to continue any insurance beyond the period provided in such policy. The additional period provided in this section shall expire fifteen days after the individual is given the notice of his rights regarding an individual policy, but in no event shall such additional period extend beyond sixty days after the expiration date of the period provided in such policy. Written notice presented to the individual or mailed by the policyholder to the last known address of the individual, or mailed by the insurer to the last known address of the individual as furnished by the policyholder, shall constitute notice for the purpose of this section.

Mo.Rev.Stat. § 376.699 (emphasis added).

Plaintiffs' claim in Count VIII falls within 29 U.S.C. § 1132 and is therefore subject to complete preemption. Plaintiffs allege that they were beneficiaries of an ERISA-regulated employee benefit plan, and it is clear that they are seeking Plan benefits. It is also clear that plaintiffs were entitled to the life insurance benefit at issue only because of the terms of that Plan.

Although it appears that plaintiffs allege a state-imposed legal duty independent of ERISA or the Plan terms, closer examination reveals otherwise. According to the Missouri statute, to assert a claim thereunder, an individual must be (1) insured under a group life insurance policy; and must have (2) become entitled **under the terms of such policy** to have an individual

policy issued. Mo.Rev.Stat. § 376.699 (emphasis added). Application of the Davila test reveals that plaintiffs' claim in Ground VIII is completely preempted. It is undisputed that plaintiffs bring suit complaining of the denial of Plan benefits, and that they were entitled to such benefits only because of the terms of the ERISA-governed Plan. Davila, 542 U.S. at 210. Furthermore, Count VIII does not allege violation of a legal duty independent of ERISA or the Plan terms. See Id. The statute's notice requirement that plaintiffs claim was violated does not arise independently of ERISA or the Plan terms; rather, it is dependent upon the terms of the Plan. The statute specifies that the entitlement to the individual policy must have come from the terms of the Plan before the notice requirement imposed by the statute became effective. It therefore cannot be said that any legal duty independent of ERISA or the Plan terms was violated. Plaintiffs' claim therefore falls "within the scope of" ERISA's civil enforcement remedy, and is therefore completely preempted by ERISA and removable to this Court. Id.

Although neither party addresses this issue, the undersigned finds it necessary to note that § 376.699 does not fall within the savings clause, 29 U.S.C. § 1144(b)(2)(A), as a law that regulates insurance. Addressing this issue, the Davila Court noted that ERISA's civil enforcement provision was an example of "a comprehensive remedial scheme [demonstrating] an 'overpowering federal policy' that determines the interpretation of a statutory provision designed to save state law from being pre-empted." Id.

at 216-17 (citing Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 375 (2002)). Noting the clear expression of Congressional intent that ERISA's civil enforcement scheme be exclusive, the Court concluded that even a state law that could arguably be characterized as "regulating insurance" would be preempted if it provided a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." Davila, 542 U.S. at 217.

### 2. Counts IV, V, VI, VII, and IX

The heart of plaintiffs' claims in Counts IV, V, VI, VII and IX is that defendants breached duties related to the ERISA-governed Plan, and plaintiffs thereby suffered the loss of a Plan benefit. It is undisputed that plaintiffs were entitled to the benefit only because of the terms of the ERISA-governed Plan. Davila, 542 U.S. at 210. Furthermore, it cannot be said that there existed a legal duty independent of ERISA or the Plan terms. Id. Were this Court to hold that Laclede was liable to plaintiffs, such liability would exist only because of Laclede's role as plan administrator of the ERISA-regulated Plan. Similarly, were this Court to hold that Great-West was liable to plaintiffs, such liability would exist only because of Great-West's role as the insurer in Laclede's ERISA-regulated benefit plan. Id. Plaintiffs' claims in Counts IV, V, VI, VII and IX therefore fall within the scope of ERISA's civil enforcement remedy, 29 U.S.C. § 1132, and are completely preempted. See Id.

In addition, ERISA itself contains specific provisions

-16-

governing the furnishing of SPDs and annual reports (29 U.S.C. § 1022-1024) and governing conversion rights (29 U.S.C. §§ 1161-1167). In fact, Counts II and III of plaintiffs' Petition allege such wrongful failure to provide requested information and SPDs under 29 U.S.C. § 1024. Congress has clearly devoted significant attention to these issues, and plaintiffs' remedies for alleged breaches of such duties lie exclusively in ERISA. Plaintiffs' claims in Counts IV, V, VI, VII and IX are completely preempted by ERISA.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiffs' Motion to Remand (Docket No. 13/filed July 3, 2008) is hereby **DENIED**.

/s/ Frederick R. Buckles
Frederick R. Buckles,
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2009.