UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOAN NOEL, and JOAN NOEL as personal representative of the estate of GLENNON NOEL, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 4:08CV00817 FRB<br>) |
| LACLEDE GAS COMPANY, et al., | )<br>) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Pending before this Court is defendant Laclede Gas Company's Motion to Dismiss Counts I, III, IV, V, VI, and VII of plaintiffs' Petition (Docket No. 6/filed June 10, 2008.) All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.  Background**

Plaintiffs' late husband, Glennon Noel, was employed by Laclede Gas Company ("Laclede") from approximately 1986 to April 10, 2006, and was a participant in an employee welfare benefit plan ("Plan") that included life insurance coverage with a death benefit of $60,000.00.  This life insurance policy (also "policy") is the only benefit of the Plan at issue in this case.  Plaintiffs were beneficiaries of the policy, and Laclede was the Plan

-1-

Administrator.[1]  The parties do not dispute that the Plan was an "employee benefit plan" subject to the rules and regulations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.  Indeed, the Plan at issue, as a plan established by the employer to provide participants benefits in the event of death, is an "employee welfare benefit plan" governed by ERISA.[2]

The essence of all counts of the Petition is that both defendants violated certain provisions of federal and state law by failing to furnish a Summary Plan Description ("SPD") and other information, and by either failing to advise, or providing wrong advice, regarding Mr. Noel's right to elect continued life insurance coverage and/or convert the life insurance policy to an individual policy upon termination of his employment.  Plaintiffs also allege that, as a result of defendants' wrongdoing, neither they nor Mr. Noel had secured other life insurance for Mr. Noel prior to his death on July 26, 2006, and the policy at issue had lapsed.  Plaintiffs limit their Petition to allegations concerning Mr. Noel's life insurance benefits, and make no allegations concerning any health insurance benefits.

Laclede now moves this Court to dismiss Counts I, III, IV, V, VI and VII of plaintiffs' Petition on the grounds that,

---

[1] Defendant Great-West Life & Annuity Insurance Company was the insurer from which Laclede purchased the policy.

[2] The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was . . . established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . ."  29 U.S.C. § 1002(1).

-2-

respectively, COBRA is inapplicable to life insurance; ERISA does not permit the claim plaintiffs assert in Count III; and Counts IV, through VII are preempted by ERISA. In response, plaintiffs contends that COBRA applies to life insurance benefits; that ERISA permits the claim they seek to bring in Count III; that they properly asserted a claim for breach of fiduciary duty; and that ERISA does not preempt their claims in Counts V through VII. For the following reasons, Laclede's motion is granted in part and denied in part.

**II. Legal Analysis**

In evaluating a Petition in the context of a motion to dismiss, the court examines whether it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 1974 (2007) (overruling the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under Bell Atlantic, it is understood that complainants are obliged to provide the grounds of their entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. While a plaintiff is not required to provide specific facts in support of their allegations, they must include sufficient factual information to provide the grounds on which his or her claim rests, and to raise a right to relief "above the speculative level." Id. at 1965. Finally, while Bell Atlantic may have abrogated the "no set of facts" language, it did not change the requirement that "when

ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007).

With this standard in mind, the undersigned now considers Laclede's motion to dismiss Counts I, III, IV, V, VI, and VII of plaintiffs' Petition.

A.  Count I

In Count I, plaintiffs allege that Laclede failed to notify them of their right to elect continued life insurance coverage following Glennon Noel's termination. Plaintiffs allege that this failure was a violation of the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), which requires the Plan Administrator to provide notice of the right to elect continued coverage following the occurrence of a qualifying event, such as termination. Plaintiffs further allege that § 1132(c)(1) provides for statutory penalties of $100.00 per day from the date of the failure to provide notice, and request damages in accordance therewith.

Via the enactment of COBRA in 1986, Congress amended ERISA to require the plan sponsor of a "group health plan" to allow each qualified beneficiary who stands to lose coverage due to a "qualifying event" to elect continued coverage, and further requires that beneficiaries receive notice of such rights. 29 U.S.C. §§ 1161(a), 1166. Termination of employment is a "qualifying event." 29 U.S.C. § 1163(2). Section 1167 of Title 29

-4-

provides that, for purposes of COBRA, "[t]he term 'group health plan' means an employee welfare benefit plan providing medical care (as defined in section 213(d) of Title 26) to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." Section 213(d) of 26 U.S.C., in relevant part, defines "medical care" as amounts paid "for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body."

Based upon the plain statutory language of COBRA, it is clear that the post-termination notice requirements apply to a "group health plan," the definition of which does not encompass a life insurance plan. 29 U.S.C. § 1167(1) and 26 U.S.C. § 213(d). As Laclede notes, this conclusion accords with court decisions considering the type of coverage to which COBRA applies. See Robin v. Metropolitan Life Ins. Co., 147 F.3d 440, 442 n. 4 (5th Cir. 1998) ("ERISA was amended in part by (COBRA) without, however, affecting life insurance"); Austell v. Raymond James & Assocs, 120 F.3d 32, 33 (4th Cir. 1997) (rejecting the argument that COBRA required coverage continuation rights for disability policies, reasoning that "the continuation requirement of COBRA is designed to focus on the provision of health care coverage"); Weeks v. Western Auto Supply Co., 2003 WL 21510822, 5 (W.D. VA 2003) ("the plain language of these provisions makes clear that the post-termination notice requirements apply to a 'group health plan,' defined as a 'plan providing medical care,' and not to a life insurance plan"); Cooksey v. Metropolitan Life Ins. Co., 2004 WL

-5-

1636973, 2 (N.D. Tex. 2004) (citing Robin, 147 F.3d at 442 n. 4) ("COBRA does not govern the continuation of life insurance benefits.")

Plaintiffs argue that the Eighth Circuit's decision in Brown v. Aventis Pharmaceuticals, Inc., 341 F.3d 822 (8th Cir. 2003) supports the allegations in Count I. The undersigned disagrees. The employee benefit plan at issue in Brown included health, dental, and life insurance coverage. Id. at 824. The district court awarded statutory damages for failure to provide COBRA notification within the required time period, and awarded civil penalties and ordered defendant to provide plaintiff with a life insurance policy for defendant's failure to provide a SPD upon request. See Id. at 825. In affirming the district court, the Eighth Circuit noted that the award of statutory penalties for the COBRA violation was proper even though plaintiff did not suffer any loss of health benefits due to the delay, because she was required to expend time, effort and money to hire an attorney to obtain the information. Id. The Eighth Circuit discussed the life insurance benefit in the context of the employer's failure to provide the SPD upon request, not in the context of failure to provide COBRA notification. See Brown, 341 F.3d at 825-28. It cannot be said that the Eighth Circuit held that the district court properly assessed statutory penalties for the failure to provide COBRA notification related to the life insurance benefits.

This becomes more apparent upon examination of the findings of the district court. The district court's Findings of

-6-

Fact and Conclusions of Law also addressed the plaintiff's loss of her life insurance benefit only in the context of discussing the defendant's failure to provide a SPD upon request. (Case No. 01-0610-CV-W-FJG, Docket No. 42 at 5-8.) Furthermore, at the summary judgment stage, the district court addressed the issue of whether COBRA applied to plaintiff Brown's life insurance benefits. In finding that COBRA notification was inapplicable to life insurance, the district court cited 29 U.S.C. § 1166 and wrote "[d]efendants are correct in the assertion that life insurance continuation notice is not governed by COBRA." (Case No. 01-0610-CV-W-2, Docket No. 35, at 4.) Therefore, it cannot be said that Brown supports the allegations contained in Count I.

In Count I of the instant Petition, plaintiffs allege only that Laclede failed to give notice of the right to elect continued life insurance coverage. Because COBRA notification requirements are inapplicable to life insurance, Count I contains insufficient facts "to state a claim to relief that is plausible on its face." See Bell Atlantic, 550 U.S. 544; 127 S.Ct. at 1974. Count I therefore should be dismissed.

B. Count III

In Count III, plaintiffs allege that Laclede violated 29 U.S.C. § 1024(b)(1) when it failed to provide SPDs at certain intervals. Plaintiff further alleges that Laclede violated 29 U.S.C. § 1022 inasmuch as it did not provide a SPD that conformed to the requirements of that section. In Count III, plaintiffs do

not allege that they made a request for any Plan information, although they do so allege in Count II. Plaintiff prays for monetary damages equal to the value of the life insurance policy; for equitable relief "as this Court deems appropriate;" for attorney's fees, for costs, and for "other and further relief."

The substantive provisions requiring Laclede to automatically provide SPDs upon which plaintiff relies in Count III are found in 29 U.S.C. § 1024(b)(1), which provides that the plan administrator "shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes [thereto]" by the later of "(A) ... 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or ... (B) ... 120 days after the plan becomes subject to [ERISA]." 29 U.S.C. § 1024(b)(1). Section 1024(b)(1) further provides that the administrator must furnish a summary description of certain modifications or changes in the plan "not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan." Id.

The authority to enforce the provisions contained in § 1024, inter alia, is found in ERISA's "Civil Enforcement" section, § 1132. Section 1132 specifically authorizes a cause of action for an administrator's failure or refusal to furnish certain information following a request for such information. 29 U.S.C. § 1132(a)(1)(A) (referencing 29 U.S.C. § 1132(c)). Under this

section, if an administrator fails or refuses to comply with a beneficiary or participant's request for information that ERISA requires the administrator to furnish, the administrator may, in the court's discretion, be personally liable to the participant/beneficiary, and required to pay up to $100.00 per day from the date of such failure or refusal. 29 U.S.C. § 1132(c). In Count III, however, plaintiffs do not allege that they requested the SPDs; only that Laclede failed to automatically provide them. Plaintiffs therefore have no cause of action under § 1132(a)(1)(A).

ERISA's civil enforcement section also permits suit "to enjoin any act or practice which violates any provision of this title or the terms of the plan" or to obtain other equitable relief. 29 U.S.C. § 1132(a)(3). In Count III, plaintiffs pray for various monetary damages, including the value of the life insurance policy at issue. While plaintiffs include a general prayer for equitable relief as this court deems appropriate, the essence of their claim in Count III is one for money damages, which are not available for breaches of the duty to automatically provide SPDs. As this district court has previously observed, "[t]he statutory damages provisions of § 1132(c) are specific and the exclusion from coverage of the "automatic" duties contained in §§ 1024(b)(1) and (3) implies an intent not to impose any financial liability (i.e., legal remedies) on administrators for violations of those duties. It was not unreasonable for Congress to conclude that the rights created by §§ 1024(b)(1) and (3), while substantial enough to warrant protection by equitable relief and the threat of criminal

sanctions, were not worthy of the risk of financial liability." Meyer v. Phillip Morris Inc., 575 F.Supp. 1232, 1236 (D.C. Mo. 1983).

Plaintiffs claim for money damages for Laclede's violation of the duty to provide Plan information at certain intervals, as plaintiffs allege, is squarely barred by ERISA's limitation of available remedies. See Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209-10 (2002) (holding that the phrase "other appropriate equitable relief" in § 1132(a)(3) is limited to forms of relief typically available in equity); see also Mertens v. Hewitt Associates, 508 U.S. 248 (1993). Therefore, because plaintiffs' claim in Count III is, in essence, one for monetary damages, Count III should be dismissed without prejudice.

C. Counts IV, V, VI, and VIII

In Counts IV, V, VI, and VIII, plaintiffs allege state law claims against Laclede for breach of fiduciary duty, negligent misrepresentation, fraudulent misrepresentation, and breach of contract, respectively. The allegations in all of these counts are repetitive. In all of these Counts, plaintiffs essentially allege that Laclede made promises and representations to Glennon Noel about his conversion rights, and provided misleading information to him about such right following his termination. Briefly, in Count IV, plaintiffs allege that Laclede promised that Glennon Noel would have the right to convert his life insurance policy to an individual policy should his employment terminate, and failed to notify him of this right upon his termination. In Count V,

plaintiffs again allege that Laclede promised Glennon Noel that he would have a conversion right, and gave him misleading information about such right following his termination.  In Count VI, plaintiffs allege that Laclede promised that Glennon Noel would have a conversion right even though he did not actually have such a right, and that Laclede was either aware that he did not have such right, or did not know whether their representation regarding such right was true or false.[3]  Finally, in Count VII, plaintiffs allege that Laclede promised Glennon Noel that he would have a conversion right; that Laclede was obligated under its Administrative Services Contract with defendant Great-West to notify Glennon Noel of such right; and failed to do so.

As Laclede correctly asserts, because all of the foregoing state law claims relate to the employee benefit plan, such that they have a connection with or reference to such plan, they are preempted by ERISA.  Shaw v. Delta Airlines, Inc., 463 U.S. 85, 98-99 (1983); see also Estes v. Fed. Express Corp., 417 F.3d 870, 872 (8th Cir. 2005) (claim relates to ERISA plan when cause of action is premised on existence of ERISA plan).

However, even though ERISA preempts plaintiffs' claims in Counts IV through VII, this Court is required to decide whether the allegations state a claim for relief under ERISA.  Slice v. Norway, 978 F.2d 1045, 1047 (8th Cir. 1992).  ERISA allows participants and beneficiaries to sue for breaches of fiduciary duty, and provides

---

[3]Plaintiffs alternately allege that Glennon Noel had the right to convert his life insurance policy upon his termination.

-11-

that a fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries; and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . . ."  29 U.S.C. § 1104(a)(1)(A)-(B).  Having considered plaintiffs' allegations in Counts IV through VII, the undersigned concludes that, to the extent that plaintiffs allege that Laclede promised or misrepresented to Glennon Noel that he would have a life insurance conversion right following termination, and subsequently provided him misleading information about such right, such alleged misrepresentations, if proved, would constitute a form of behavior implicating the fiduciary relationship that Congress intended ERISA to govern.  Kuntz v. Reese, 760 F.2d 926, 935 (9th Cir. 1985) (ERISA provides federal cause of action for fiduciary's misrepresentation of plan coverage), *vacated on other grounds*, 785 F.2d 1410 (9th Cir. 1986); see also Powell v. Bob Downes Chrysler-Plymouth, Inc., 763 F.Supp. 1023, 1027 (E.D. Mo. 1991) (claim of negligent misrepresentation construed as claim of breach of fiduciary duty arising under ERISA); Board of Trustees v. Continental Assur. Co., 690 F.Supp. 792, 795 (W.D. Ark. 1988) (allegations underlying breach-of-contract, breach of fiduciary duty, and negligence claims state claim under ERISA for breach of fiduciary duty).

Therefore, this Court finds that plaintiffs' claims in Counts IV through VII are preempted by ERISA, but declines to dismiss the allegations therein, inasmuch as the allegations state a claim under ERISA that is plausible on its face. See <u>Bell Atlantic Corp.</u>, 550 U.S. 544, 127 S.Ct. at 1964-65. However, to the extent that plaintiffs allege that COBRA required Laclede to provide notice of the right to continued life insurance coverage, such claim is dismissed for the reasons set out above.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that Laclede's Motion to Dismiss is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Count I of plaintiffs' Petition for Damages is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Count III is dismissed without prejudice.

**IT IS FURTHER ORDERED** that Counts IV through VII are preempted by ERISA, but the allegations therein are not subject to dismissal.

_Frederick R. Buckles_
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2009.